**UNITED STATES of America, Appellee,**

v.

**Richard Vunzell BOBO, Jr., Appellant.**

No. 92–2467.

United States Court of Appeals,
Eighth Circuit.

Submitted Feb. 18, 1993.

Decided June 3, 1993.

Paul Engh, Minneapolis, MN, argued, for appellant.

Jon M. Hopeman, Asst. U.S. Atty., Minneapolis, MN, argued, for appellee.

Before BOWMAN, WOLLMAN, and HANSEN, Circuit Judges.

BOWMAN, Circuit Judge.

Richard Vunzell Bobo Jr. appeals his conviction and sentence after trial by jury on firearms charges. We affirm the judgment of the District Court.[1]

The facts of the case are as follows. Jeffrey Barlow was shot and killed outside the Metro Bar in St. Paul, Minnesota, while about forty-five people stood in a crowd outside the bar. Although no one came forward who actually witnessed the shooting, Jolene Mason was fifteen feet away from the shooting and gave the following description of a person she saw run from behind the victim just after the sound of the gunshot: black male, approximately five feet, eight inches to five feet, nine inches tall, shoulder length hair in a "jerry curl" fashion, and a mustache.

The day after the shooting, Detective Freichels of the St. Paul Police Department received a telephone call from an anonymous male who told him that Virgil Tolfrey paid "Hanky" Bobo $5000 and five ounces of cocaine to kill Barlow. The caller did not explain how he knew the information he gave to Freichels. The next day, Sergeant Paskett of the St. Paul Police Homicide Unit received a telephone call from an anonymous female relating the exact same information: Virgil Tolfrey hired "Hanky" Bobo to kill Barlow for $5000 and five ounces of cocaine.

The police entered the name "Bobo" into their computer and came up with the names Marvin Bobo and Richard Bobo. The two men are brothers. Detective Freichels thought that Marvin Bobo resembled Jolene Mason's description of the man she saw run from the shooting. Freichels showed Mason twenty photographs, including photographs of both Bobos, and she stated that Marvin Bobo's hair as it appeared in his photograph

---

1. The Honorable Harry H. MacLaughlin, United States District Judge for the District of Minnesota.

was very similar to that of the person she saw at the crime scene, but she could not positively identify Marvin as that person.

Detective Freichels interviewed a reliable informant for the narcotics unit of the St. Paul Police Department who advised Freichels that an El Rukn gang member who witnessed the shooting stated that Virgil Tolfrey paid "Hanky" Bobo to do the killing. Photographs taken contemporaneously at the crime scene corroborate the presence of an El Rukn gang member, who was identifiable because he was dressed and had a beard in the El Rukn gang fashion.

Victoria Steele, Barlow's girlfriend, told Detective Freichels that word on the street was that Virgil Tolfrey hired "Hanky" Bobo to kill Barlow for $5000 and five ounces of cocaine. Steele also told Freichels that Barlow had had a dispute with Tolfrey; Barlow had stolen Tolfrey's jewelry, and Tolfrey had caught Barlow in bed with Tolfrey's girlfriend. Steele saw Tolfrey in the Metro Bar before the shooting and then outside the bar and across the street immediately before the shooting.

Detective Freichels then interviewed Anthony Crenshaw, an acquaintance of Barlow and brother of the woman Virgil Tolfrey caught in bed with Barlow. Crenshaw told Freichels that word on the street was that "Hanky" Bobo killed Barlow for dope and money. Crenshaw confirmed that Tolfrey thought that Barlow and Crenshaw's sister had set up the burglary of Tolfrey's residence, and that Barlow was wearing Tolfrey's jewelry in public. Freichels had prior knowledge that Tolfrey was involved in drug trafficking, lending further credence to the various informants' information.

Based upon the foregoing facts, Freichels, believing "Hanky" Bobo to be Marvin Bobo, put out a "pickup order" for Marvin Bobo. Marvin was described as a black male approximately five feet, ten inches tall with a medium build and jerry-curled hair, and known to be driving a large green Cadillac. Officer David Pavlak was advised of the pickup order, and he had a mug shot of Marvin with him in his squad car. He tried to locate Marvin by going to the houses of two of Marvin's girlfriends, who both told him that Marvin had been there earlier and had left in his green Cadillac, which they described as being in beat-up condition.

Later the same day, Pavlak was driving his marked squad car when he saw a green Cadillac in poor condition approaching from the opposite direction. Traffic was moving slowly and Pavlak was able to get a good view of the drivers of vehicles in the opposite-direction lane as they passed him. When the Cadillac went by, Pavlak looked at the driver and thought that he closely resembled the mug shot of Marvin Bobo. Pavlak immediately called for assistance and turned around to get behind the Cadillac. Officer David Korus responded to Pavlak's call and also began to follow the Cadillac.

After following the Cadillac for a couple of blocks the officers turned on their red lights and sounded their sirens. The Cadillac did not immediately pull over and began to weave all over the road. Both officers noticed the driver making motions with his upper body as if he was pulling something out of his waistband and placing it under the seat of the car. After the Cadillac finally pulled over, the driver ducked to his right and appeared to reach under the driver's seat. Officers Pavlak and Korus got out of their squad cars with their weapons drawn. The driver of the Cadillac was taken out of the car at gunpoint, put on his knees, handcuffed, searched, and placed under arrest for suspicion of homicide.

After the driver's arrest, the officers learned from him that he was Richard Bobo and not his brother Marvin. Before Richard was put in the squad car, another officer approached the Cadillac and saw a gun partially tucked under the front seat. Richard was placed in the squad car and the loaded revolver was seized from the Cadillac. Officer Pavlak booked Richard for an outstanding felony arrest warrant from the Minnesota Department of Corrections for a probation violation, for the state offense of having a handgun in a motor vehicle, and for being a felon in possession of a handgun. Detective Freichels told Richard to call Marvin so Marvin could turn himself in. When Richard called Marvin, Richard identified himself as

"Hanky." This is the first time that the police knew that "Hanky" Bobo was Richard, not Marvin, Bobo.

A United States Grand Jury returned a one-count indictment charging Richard Bobo with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g) (1988). A United States magistrate judge conducted a suppression hearing and issued a report and recommendation to grant Bobo's motion to suppress the firearm in question. The District Court rejected the magistrate judge's report and recommendation and ruled that the firearm should not be suppressed. Bobo was found guilty by a jury and, because he previously had been convicted of three violent felonies, his sentence was enhanced under 18 U.S.C. § 924(e)(1) (1988). This appeal followed.

■ Richard Bobo contends that the St. Paul police did not have probable cause to arrest Marvin Bobo, and therefore that Richard's arrest, under the mistaken belief on the part of the police that he was Marvin, was unlawful. We disagree. Initially, we note that if the police had probable cause to arrest Marvin, and they reasonably believed that the man driving the green Cadillac was Marvin, then Richard's arrest was a valid arrest. *See Hill v. California,* 401 U.S. 797, 802, 91 S.Ct. 1106, 1110, 28 L.Ed.2d 484 (1971). Based on the testimony that the brothers resemble each other, and the fact that Richard was driving Marvin's green Cadillac, we find it was reasonable for Officer Pavlak to have assumed that the driver of the car was Marvin. Thus our sole inquiry is whether the police had probable cause to arrest Marvin.

■ We review a district court's determination of probable cause under the clearly erroneous standard and will affirm the court's decision unless it is not supported by substantial evidence or is based on an erroneous conception of applicable law, or if, after we consider the entire record, we are left with the firm and definite conviction that a mistake was made. *United States v. Wallraff,* 705 F.2d 980, 987 (8th Cir.1983). Probable cause exists if the "facts and circumstances within the officer's knowledge ... are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo,* 443 U.S. 31, 37, 99 S.Ct. 2627, 2632, 61 L.Ed.2d 343 (1979). A determination of probable cause rests on a view of the totality of the circumstances and "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Illinois v. Gates,* 462 U.S. 213, 244 n. 13, 103 S.Ct. 2317, 2335 n. 13, 76 L.Ed.2d 527 (1983).

■ The government contends that the "cumulative effect of the facts in the totality of the circumstances" supports the District Court's finding of probable cause to arrest Marvin Bobo. *Warren v. City of Lincoln, Neb.,* 864 F.2d 1436, 1440 (8th Cir.) (en banc), *cert. denied,* 490 U.S. 1091, 109 S.Ct. 2431, 104 L.Ed.2d 988 (1989) (quoting *United States v. Archer,* 840 F.2d 567, 573 (8th Cir.), *cert. denied,* 488 U.S. 941, 109 S.Ct. 365, 102 L.Ed.2d 354 (1988)). We agree. The District Court based its finding on the following information: two unknown informants told police that Virgil Tolfrey paid "Hanky" Bobo $5000 and five ounces of cocaine to kill Barlow; a reliable confidential informant gave police the exact same information which he had obtained from a source, and the police independently corroborated the information and the existence of the source; Victoria Steele, the victim's girlfriend, related the same information to the police; and Jolene Mason told the police that Marvin Bobo looked like the man she saw running from behind the victim after the shooting. Based on this information and considering the totality of the circumstances, we conclude that the trial court's finding of probable cause is not clearly erroneous.

■ Bobo further contends that it was error not to ask the members of the venire during voir dire whether they would be prejudiced by his prior felonies. The trial court has "broad discretion as to the questions to be asked [during voir dire]," *Aldridge v. United States,* 283 U.S. 308, 310, 51 S.Ct. 470, 471, 75 L.Ed. 1054 (1931), and we will not reverse its rulings "absent an abuse of

discretion." *United States v. Bear Runner,* 502 F.2d 908, 911 (8th Cir.1974). The trial court gave the jurors a cautionary instruction at the time they heard the evidence of Bobo's previous convictions and again during the charge to the jury. The court did not abuse its discretion in declining to make Bobo's prior convictions a subject of inquiry during voir dire.

■ Next, Bobo contends that it was error not to admit his brother Marvin's out-of-court statement that the gun was his and not Richard's. Bobo argues that Marvin's statement was against Marvin's penal interest and admissible under Federal Rule of Evidence 804(b)(3). We disagree. Hearsay statements may be admitted under Rule 804(b)(3) if the following three elements are met:

> (1) the declarant must be unavailable to testify at trial, (2) the statement must tend to subject the declarant to criminal liability to such an extent that no reasonable person in his position would have made the statement unless he believed it to be true, and (3) the statement must be supported by corroborating circumstances clearly indicating the trustworthiness of the statement.

*United States v. Seabolt,* 958 F.2d 231, 233 (8th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1411, 122 L.Ed.2d 782 (1993). Concluding that Marvin's statement fails to satisfy the third element of this test—trustworthiness—we reject Richard's claim of error.

In *United States v. Rasmussen,* 790 F.2d 55, 56 (8th Cir.1986), we listed five factors that aid in determining the trustworthiness of a hearsay statement against the declarant's penal interest:

> (1) whether there is any apparent motive for the out-of-court declarant to misrepresent the matter, (2) the general character of the speaker, (3) whether other people heard the out-of-court statement, (4) whether the statement was made spontaneously, (5) the timing of the declaration and the relationship between the speaker and the witness.

All of these factors weigh against the trustworthiness of Marvin's statement. Marvin is Richard's brother, and certain close relationships, such as the sibling relationship, have long been recognized to diminish the trustworthiness of hearsay statements against the declarant's penal interest. *See, e.g., United States v. Porter,* 881 F.2d 878, 883 (10th Cir.), *cert. denied,* 493 U.S. 944, 110 S.Ct. 348, 107 L.Ed.2d 336 (1989) (court refused to admit statements of defendant's brother based on the relationship between the brothers and because there was little evidence to corroborate the statement). Furthermore, Marvin is not a reliable declarant. He was convicted of a cocaine felony in December 1990 and a stay of imposition of his sentence was revoked because he tested positive for cocaine in his October 1991 urinalysis. *See United States v. MacDonald,* 688 F.2d 224, 233 (4th Cir.1982), *cert. denied,* 459 U.S. 1103, 103 S.Ct. 726, 74 L.Ed.2d 951 (1983) (declarant's long history of drug use made her an "inherently unreliable witness"). Finally, no one besides the in-court witness heard Marvin's statement, Marvin made several contradictory statements concerning his knowledge of and ownership of the gun, and the statement at issue not only was not spontaneous, but it was not uttered until the eve of trial. The trial court did not abuse its discretion in excluding Marvin's hearsay statement.

■ Bobo's final argument is that the trial court erred in rejecting his claim that his 1986 guilty plea to a charge of burglary was invalid and thus his conviction upon the guilty plea could not be used to enhance his sentence. "The defendant bears the burden of proving, by a preponderance of the evidence, that his prior convictions cannot be used for sentence enhancement." *United States v. Day,* 949 F.2d 973, 982 (8th Cir. 1991). A guilty plea is presumed valid when it is entered with the assistance of counsel, and we review the District Court's finding of validity under the clearly erroneous standard. *United States v. Washington,* 886 F.2d 154, 157 (8th Cir.1989), *cert. denied,* 494 U.S. 1058, 110 S.Ct. 1529, 108 L.Ed.2d 768 (1990). Bobo had the assistance of counsel when he entered his guilty plea, and his contentions on appeal border on the frivolous. The District Court's finding is not clearly erroneous.

Bobo's conviction and·sentence are af-
firmed.