# United States Court of Appeals
## For the Eighth Circuit

---

No. 12-2813

---

Brian Thorvald Ulrich

*Plaintiff - Appellant*

v.

Pope County; Deputy Gilbert Mitchell; and Deputy Eric Thesing, in their
Individual and Official Capacities

*Defendants - Appellants*

---

Appeal from United States District Court
for the District of Minnesota

---

Submitted: March 14, 2013
Filed: May 21, 2013

---

Before WOLLMAN and COLLOTON, Circuit Judges, and HOLMES,[1] District
Judge.

---

HOLMES, District Judge.

---

[1] The Honorable P.K. Holmes, III, Chief Judge, United States District Court for
the Western District of Arkansas, sitting by designation.

Brian Thorvald Ulrich appeals the judgment of the district court[2] dismissing his case with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6). We affirm.

I.

On May 27, 2011, Ulrich and his wife attended the high school graduation ceremony of MaKenzie Ronning, the daughter of Ulrich's former girlfriend, Kristen Mohs (formerly Kristen Crane). At the time of the graduation, there was a valid harassment restraining order (HRO) in effect which provided that Ulrich "shall not harass" and "shall have no contact with" Mohs or her three children, including Ronning.[3] The HRO did not specify that Ulrich was required to maintain a particular distance from Mohs or her children in order to be in compliance; instead, the order provided more generally that a violation could occur through "[a]ny contact with Petitioner [Mohs], direct or indirect[,] and including any minor children included in this Order . . . ." The HRO also required Ulrich to "stay away from Petitioner [Mohs'] place of employment located at Minnewaska School District . . . ." Ulrich admits that he was aware of the existence and content of the HRO yet chose to attend Ronning's graduation.

After Ulrich and his wife arrived at Ronning's high school and seated themselves in the gymnasium bleachers, an individual reported Ulrich's presence to the police. In response to the report, Deputy Gilbert Mitchell arrived at the school and asked Ulrich to speak with him in the hallway. During questioning, Ulrich expressed his belief that he had not violated the HRO. First, Ulrich felt he had not violated the

___

[2] The Honorable Donovan W. Frank, United States District Judge for the District of Minnesota.

[3] The HRO was entered on October 21, 2009, and was set to expire two years later, on October 21, 2011. Just prior to the graduation ceremony, Ulrich moved the state court to change the order and remove the children from its protection. That motion was denied on April 27, 2011.

indirect-contact provision of the HRO because he had not yet seen Mohs or Ronning while in the gymnasium and was not planning to make contact with them during the ceremony. Second, Ulrich was convinced that his presence on school property did not violate the HRO's place-of-employment provision because Mohs was no longer employed by the Minnewaska School District.

Deputy Eric Thesing then arrived on the scene and soon after obtained a copy of the HRO. Thesing spoke with Mohs in the gymnasium, and she confirmed that she had not had any contact with Ulrich and no longer worked for the Minnewaska School District. Nevertheless, Mohs expressed her wish that Ulrich be arrested for violating the HRO. Thesing then returned to Ulrich and stated that even though Ulrich was "technically correct" that he had not violated the HRO, Ulrich still needed to leave the building. Ulrich refused to leave and instead invited police to sit beside him and his wife during the ceremony and watch them leave afterward to ensure that Ulrich made no contact with Mohs or Ronning in violation of the HRO. The deputies declined Ulrich's offer and decided to arrest him when Ulrich told the deputies again he would not leave the building. He was charged with "Violation of Restraining Order," which is a misdemeanor under Minnesota law. Minn. Stat. Ann. § 609.748 Subd. 6 (2012). Ulrich was detained at the Douglas County Jail for approximately 90 hours following his arrest.

On January 19, 2012, Ulrich filed suit against Mitchell and Thesing, in both their individual and official capacities, and against Pope County, Minnesota. As to the arresting deputies, Ulrich made claims pursuant to 42 U.S.C. § 1983 for arresting him without probable cause in violation of the Fourth Amendment and for preventing him from attending and participating in Ronning's public high school graduation in violation of the First Amendment. As to Pope County, Ulrich made a § 1983 claim for failure to adequately supervise and train the County's deputies and for developing policies or customs that exhibited deliberate indifference to the constitutional rights of citizens. Finally, as to all three defendants, Ulrich asserted a claim for false imprisonment under Minnesota law.

The district court granted the Defendants' motion to dismiss the case pursuant to Federal Rule of Civil Procedure 12(b)(6). The district court determined that Mitchell and Thesing were entitled to qualified immunity that shielded them from liability for Ulrich's § 1983 and constitutional claims. Ulrich's § 1983 claim against Pope County was also dismissed after the district court determined that Ulrich's constitutional rights had not been violated and that no facts had been alleged to demonstrate a widespread policy or custom by the County to violate individuals' constitutional rights. As for Ulrich's state-law claim for false imprisonment, the district court held that because Ulrich had failed to allege facts showing the deputies had acted willfully or with malice, their decision to jail Ulrich following arrest was protected from civil liability through official immunity, which also protected Pope County by extension.

After dismissal of all claims by the district court, Ulrich filed this appeal.

## II.

We review de novo a district court's decision to grant a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), and in doing so accept as true a plaintiff's well pleaded allegations. *Parkhurst v. Tabor*, 569 F.3d 861, 865 (8th Cir. 2009). "[D]ismissal is inappropriate unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Hafley v. Lohman*, 90 F.3d 264, 266 (8th Cir. 1996) (internal quotation and citation omitted).

## A.

We first consider Mitchell and Thesing's entitlement to qualified immunity for the federal claims made against them. "[Q]ualified immunity is an affirmative defense

[that] will be upheld on a 12(b)(6) motion only when the immunity is established on the face of the complaint." *Weaver v. Clarke*, 45 F.3d 1253, 1255 (8th Cir. 1995) (internal citation omitted). "Qualified immunity shields a public official from suit for civil damages when his 'conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Bernini v. City of St. Paul*, 665 F.3d 997, 1002 (8th Cir. 2012) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). A police officer is therefore entitled to qualified immunity unless the evidence establishes (1) that a plaintiff's constitutional rights have been violated, and (2) those rights were so clearly established at the time of the violation that a reasonable officer would have known that his actions were unlawful. *Id.*

Here, we conclude that Mitchell and Thesing are entitled to qualified immunity on Ulrich's Fourth Amendment claim.[4] We find that the arresting deputies had at least arguable probable cause to arrest Ulrich for the crime of knowingly violating a valid restraining order, pursuant to Minn. Stat. Ann. § 609.748 Subd. 6 (2012).

"A warrantless arrest is consistent with the Fourth Amendment if it is supported by probable cause, and an officer is entitled to qualified immunity if there is at least 'arguable probable cause.'" *Borgman v. Kedley*, 646 F.3d 518, 522-23 (8th Cir. 2011)

---

[4] Ulrich's brief on appeal did not include any meaningful argument regarding his First Amendment claim separate from his Fourth Amendment claim. We decline, therefore, to address this issue not properly raised on appeal. We note that because we find that Mitchell and Thesing had arguable probable cause to arrest Ulrich for violation of a restraining order—a misdemeanor offense under Minnesota law—the deputies would likely also be immune from suit for a First Amendment violation. *See Smithson v. Aldrich*, 235 F.3d 1058, 1063 (8th Cir. 2000) (stating that even a finding that an arrest was pretext for an attempt to violate the plaintiff's First Amendment rights would not nullify a finding of probable cause nor would it prevent the application of the qualified immunity defense). We make no such finding, however, without having the benefit of a developed record on this issue on appeal. Instead, we consider any claim of error as to Ulrich's First Amendment claim to have been abandoned.

(quoting *Walker v. City of Pine Bluff*, 414 F.3d 989, 992 (8th Cir. 2005)). Probable cause to make a warrantless arrest exists "when the totality of the circumstances at the time of the arrest are sufficient to lead a reasonable person to believe that the defendant has committed or is committing an offense." *Id.* (quotation omitted). "Arguable probable cause exists even where an officer mistakenly arrests a suspect believing it is based in probable cause if the mistake is 'objectively reasonable.'" *Id.* at 523 (quoting *Amrine v. Brooks*, 522 F.3d 823, 832 (8th Cir. 2008)). The probable cause standard inherently allows room for reasonable mistakes by a reasonable person, but the qualified immunity standard affords law enforcement officials an even wider berth for mistaken judgments "by protecting all but the plainly incompetent or those who knowingly violate the law." *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (internal quotation omitted). We recognize this accommodation for reasonable error is necessary "because officials should not err always on the side of caution because they fear being sued." *Id.*

Notwithstanding the distinction between the two legal concepts, an analysis of arguable probable cause necessarily includes consideration of probable cause. In analyzing whether *arguable probable cause* exists in this case, we must determine whether Mitchell and Thesing's arrest of Ulrich was based on an objectively reasonable—even if mistaken—belief that the arrest was based in *probable cause*.\

Drawing inferences in favor of Ulrich, while viewing the facts from the perspective of a reasonable officer, we conclude that the district court did not err in finding that Mitchell and Thesing were entitled to qualified immunity on Ulrich's Fourth Amendment claim.

The HRO specifically prohibited Ulrich from having either direct or indirect contact with Ronning or her mother, Mohs. While it does not appear that the Minnesota Supreme Court has defined "indirect contact" in this context, the Minnesota Court of Appeals has held in several unpublished opinions that indirect

contact can occur when a defendant knowingly comes in close proximity to a person or persons protected by a court order. *State v. Hazeman*, 2002 WL 1050364 (Minn. Ct. App. May 28, 2002) (unpublished) (knowingly driving near and parking in close proximity to person protected by restraining order constitutes indirect contact in violation of the order); *Harju v. Fabian*, 2006 WL 2255898 (Minn. Ct. App. Aug. 8, 2006) (unpublished) (offender's mere presence on pediatric floor of a clinic violates provision of conditional release prohibiting him from direct or indirect contact with minors), *review denied* (Minn. Nov. 14, 2006); *State v. George*, 2011 WL 1743884 (Minn. Ct. App. May 9, 2011) (unpublished) (offender's observation of granddaughter from a distance without her knowledge violates provision of probation agreement prohibiting direct or indirect contact).[5]

In this case, Mitchell and Thesing questioned both Ulrich and Mohs and reviewed a copy of the HRO before concluding that Ulrich was in violation of the Order. Under Minnesota law, it is a misdemeanor offense to violate a restraining order when the offender knows of the order. Minn. Stat. Ann. § 609.748 Subd. 6 (2012). There is no dispute in this case that Ulrich knew the HRO was in effect. Ulrich admitted to police that he intentionally attended what was a relatively small public event for the explicit purpose of seeing Ronning, and with the full knowledge that Mohs would also likely be present. Given the current status of Minnesota law regarding the meaning of "indirect contact," it was objectively reasonable for Mitchell and Thesing to believe that probable cause existed to arrest Ulrich for a violation of the HRO through his intentional presence and conduct at the graduation ceremony.

---

[5] Minnesota law specifies that unpublished cases do not have precedential value. Minn. Stat. Ann. § 480A.08 Subd. 3(c) (2012). However, we have held that "[d]ecisions of intermediate state appellate courts are persuasive authority that we follow when they are the best evidence of what state law is." *Minn. Supply Co. v. Raymond Corp.*, 472 F.3d 524, 534 (8th Cir. 2006). We find that the Minnesota Supreme Court would likely decide in line with these unpublished cases and accordingly acknowledge these cases as persuasive authority.

We find, therefore, that the factual circumstances of this case gave rise to arguable probable cause for Ulrich's arrest.

Finally, we address Ulrich's argument regarding Thesing's pre-arrest statement that "technically" no violation of the HRO had yet occurred. Ulrich contends that Thesing's statement somehow negates the existence of arguable probable cause. First, we are reluctant to rely on any statement by Thesing that may have been taken out of the context of a broader interaction. We cannot know why Thesing made the statement to Ulrich,[6] and we cannot know what Thesing may have intended by it or if he later changed his evaluation before arresting Ulrich. Second, the existence of probable cause or arguable probable cause depends on the viewpoint of an objectively reasonable officer, not the viewpoint of the particular arresting officer. *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004). Thesing's pre-arrest statement does not, therefore, alter our finding that the district court did not err in granting qualified immunity to Mitchell and Thesing.

B.

We now turn to Pope County's liability pursuant to § 1983 for its alleged failure to adequately supervise and train the County's deputies and for developing policies or customs that exhibited deliberate indifference to the constitutional rights of citizens. "A municipality can be liable under § 1983 if an 'action pursuant to official municipal policy of some nature caused a constitutional tort.'" *Bernini*, 665 F.3d at 1007

---

[6] It appears that in making this comment, Thesing may have been referring to the provision of the HRO that required Ulrich to "stay away" from Mohs' place of employment, which was formerly the Minnewaska School District. Prior to Thesing making this comment, Ulrich had informed him that Mohs was no longer employed by the School District, a fact which Mohs subsequently confirmed. Based on the current record, however, we cannot make any definitive finding about the meaning of Thesing's comment.

(quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)). There must be a causal connection between the municipal policy or custom and the alleged constitutional deprivation in order to state a valid claim under § 1983. *City of Canton v. Harris*, 489 U.S. 378, 385 (1989).

To survive a motion to dismiss, a complaint must allege facts sufficient "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Considering this pleading standard, in order to state a viable § 1983 claim against Pope County, Ulrich was required to plead facts sufficient to show that (1) Pope County's officer-training practices were inadequate; (2) Pope County was deliberately indifferent to the rights of others in adopting these training practices, and Pope County's failure to train was a result of deliberate and conscious choices it made; and (3) Pope County's alleged training deficiencies caused Ulrich's constitutional deprivation. *Andrews v. Fowler*, 98 F.3d 1069, 1076 (8th Cir. 1996) (citing *City of Canton*, 489 U.S. at 389).

Even assuming arguendo that Ulrich suffered a constitutional deprivation, we agree with the district court that Ulrich alleged no facts in his complaint that would demonstrate the existence of a policy or custom by Pope County that caused such deprivation. Ulrich labels Pope County's supervision and training practices as "inadequate" but points to no facts to support this assertion other than the example of his own arrest and detention. Generally, an isolated incident of alleged police misconduct, such as Ulrich alleges occurred here, cannot, as a matter of law, establish a municipal policy or custom creating liability under § 1983. *Wedemeier v. City of Ballwin*, 931 F.2d 24, 26 (8th Cir. 1991). Ulrich further fails to provide facts in his complaint to support his assertion that Pope County adopted deficient supervision and training practices with deliberate indifference to the constitutional rights of others, and that these training practices were the product of the County's deliberate and conscious choices. Accordingly, the district court's dismissal of Ulrich's § 1983 claim against Pope County is affirmed.

C.

The last issue Ulrich disputes on appeal is the district court's dismissal of his false imprisonment claim under Minnesota law. Ulrich maintains that the nature of his conduct prior to and during arrest obligated police to merely issue him a citation and release him, rather than incarcerate him in the county jail. To support his argument, Ulrich relies on Minnesota Rule of Criminal Procedure 6.01, which provides that an officer "who act[s] without a warrant must issue a citation and release the defendant unless it reasonably appears: . . . (2) further criminal conduct will occur; or (3) a substantial likelihood exists that the person will not respond to a citation."

The district court found that Mitchell, Thesing, and vicariously, Pope County, were shielded from liability for Ulrich's claim of false imprisonment due to the application of common law official immunity. "Common law official immunity generally applies to prevent a public official charged by law with duties which call for the exercise of his judgment or discretion from being held personally liable to an individual for damages." *Schroeder v. St. Louis County*, 708 N.W.2d 497, 505 (Minn. 2006) (internal quotation omitted). Official immunity only applies when an officer is charged with executing discretionary functions, as opposed to ministerial functions. *Id.* "This immunity extends to shield governmental entities from vicarious liability for an officer's actions." *Loch v. City of Litchfield*, 689 F.3d 961, 967 (8th Cir. 2012) (citing *Wiederholt v. City of Minneapolis*, 581 N.W.2d 312, 316 (Minn. 1998)). Official immunity does not, however, shield police officers' discretionary functions when they are undertaken willfully or with malice. *Id.* Malice in this context "means nothing more than the intentional doing of a wrongful act without legal justification or excuse, or, otherwise stated, the willful violation of a known right." *Rico v. State*, 472 N.W.2d 100, 107 (Minn. 1991) (quotation omitted).

Ulrich contends that official immunity should not protect Mitchell and Thesing's decision to incarcerate Ulrich after arrest because (1) they were performing

ministerial functions, rather than discretionary functions, and (2) they were acting willfully or with malice.

We affirm the district court's finding that Mitchell and Thesing were performing discretionary, rather than ministerial, functions when they determined that Ulrich should be incarcerated following arrest. The nature of a discretionary duty is that it involves "individual professional judgment that necessarily reflects the professional goal and factors of a situation," rather than "a specific duty arising from fixed and designated facts." *Wiederholt*, 581 N.W.2d at 315 (internal quotation omitted). Mitchell and Thesing used their professional judgment in determining that probable cause existed to arrest Ulrich. They further determined that the factors of the situation warranted placing Ulrich in county jail rather than releasing him.

We further affirm the district court's finding that "[t]here are no facts alleged in the Complaint that would suggest that Deputies Mitchell and Thesing acted willfully or with malice." Here, Mitchell and Thesing's decision to place Ulrich in jail following arrest comported with an objectively reasonable interpretation of Minnesota Rule of Criminal Procedure 6.01, and thus, no malice may be inferred. Ulrich admits in his brief on appeal that prior to his arrest, he informed deputies "that he was positive that he was not violating any restraining order" and "intended to return to the gymnasium." Given these circumstances, a reasonable officer could have concluded that Ulrich was likely to return to the graduation ceremony if released and that further criminal conduct would occur.

Accordingly, we conclude that Mitchell and Thesing, and by extension Pope County, are entitled to official immunity on Ulrich's false imprisonment claim, and this claim was properly dismissed by the district court.

The district court's judgment is affirmed in all respects.

———————————————