# United States Court of Appeals
## For the Eighth Circuit

_____

No. 14-1247

_____

United States of America

*Plaintiff - Appellee*

v.

Broderick Patrick

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Little Rock

_____

Submitted: November 11, 2014
Filed: January 23, 2015

_____

Before RILEY, Chief Judge, BEAM and GRUENDER, Circuit Judges.

_____

RILEY, Chief Judge.

Based initially on the mistaken belief that Broderick Patrick was the suspect in their case with the same first name, police stopped Patrick in his car and, upon searching the car, found several packages of marijuana and fake cocaine in his possession. Having since been convicted of possessing marijuana with intent to

distribute, see 21 U.S.C. § 841(a)(1), (b)(1)(D), Patrick appeals the district court's[1] order denying his motion to suppress all evidence seized during the stop, contending law enforcement unreasonably mistook his identity in believing him to be the felon they were seeking. Because we agree with the district court that the officers' actions were well within constitutional limits, we affirm.[2]

## I.    BACKGROUND

In 2012, police in Little Rock, Arkansas, had DNA evidence suggesting Brodrick Barefield unlawfully possessed a firearm and engaged in a gunfight. When the Bureau of Alcohol, Firearms, Tobacco and Explosives "adopted" Barefield's case from the Little Rock Police Department, Special Agent David Oliver obtained a federal criminal complaint and arrest warrant for Barefield and attempted to locate him. Barefield's case file contained his driver's license photo, showing Barefield with braided hair.

Unable to locate Barefield at his last known address, Agent Oliver contacted several informants on July 3, 2012, seeking information on Barefield. That same day, Agent Oliver received a call from a confidential informant who purported to know Barefield's whereabouts. At Agent Oliver's request, the informant arranged a meeting that evening in a McDonald's parking lot with the person he claimed was Barefield. The informant reported Barefield would arrive in a gold Oldsmobile with a dented passenger-side door and would have a plastic water bottle containing drugs.

Agent Oliver and Special Agent Warren Newman established surveillance across the street from the McDonald's lot—about 100 yards from the meeting place —while North Little Rock Police Officer Christopher Gann positioned himself nearby

---

[1]The Honorable Brian S. Miller, United States District Judge for the Eastern District of Arkansas.

[2]We are cloaked with appellate jurisdiction by 28 U.S.C. § 1291.

in a marked police car. At the appointed time, a gold-brown Buick arrived and parked near the informant. The car's driver exited the car and conversed with the informant for several minutes, then got back into his car and left. As the car turned onto the street, its passenger side was exposed revealing a dented door. Neither Agent Oliver nor Agent Newman was able positively to identify the driver as Barefield.

Tasked with apprehending the driver, Officer Gann and another North Little Rock officer conducted a traffic stop. At the time, Officer Gann had not seen a photo of Barefield, but was told the driver would be an African-American male with a warrant out for his arrest, would be driving a gold-brown Oldsmobile with a damaged passenger-side door, and was likely armed. These two officers approached the car with their guns drawn, observing a female in the front seat and a child in the back seat. Officer Gann removed the driver (an African-American male), placed him in handcuffs, patted him down, and placed him in Officer Gann's vehicle. As he removed the driver, Officer Gann noticed a clear Aquafina water bottle in the car's center console which appeared to have a "leafy substance floating in it."

At some point during the stop, Agents Oliver and Newman arrived in separate vehicles, parked their cars behind Officer Gann's car, and stood back from the scene about a "car length" away. Once the driver was secure in Officer Gann's vehicle, Agent Newman "walk[ed] straight to the" suspect's car to begin searching for drugs.

Agent Newman also observed the clear Aquafina water bottle in the center console, apparently containing both white and green substances. Upon further inspection, Agent Newman found the top of the bottle could be removed to access packages of marijuana and fake cocaine inside. Agent Newman also found a digital scale in the glove box.

Meanwhile, Officer Gann questioned the driver. The driver claimed to have no identification on him but later stated he was Andre Patrick, born on September 19, 1974. A search for this name revealed no record in the law enforcement database. Agent Oliver became suspicious because he had noticed what he thought were prison tattoos on the driver's arms, which would be inconsistent with the clean criminal record produced by a search of the driver's reported name. Agent Oliver asked the driver his name and whether he had ever been to prison. The driver again gave the name "Andre Patrick" and said he had never been to prison. The officers then brought the driver to the detective office of the North Little Rock police station where one of the detectives identified the driver as Broderick Patrick, a man who also had an outstanding warrant for arrest. "Andre" is the name of Patrick's brother.

After being charged with possessing marijuana with intent to distribute, Patrick moved to suppress the evidence seized during the stop, maintaining "the stop and search of the vehicle was a violation of his constitutional rights." After an evidentiary hearing, the district court denied the motion, determining the officers were justified in stopping Patrick and searching the car. After a trial, the jury returned a guilty verdict, and Patrick now appeals the denial of his motion to suppress.

## II.    DISCUSSION

"On review of a motion to suppress, we review the district court's factual findings for clear error and review its legal conclusions *de novo*." United States v. Sigillito, 759 F.3d 913, 923 (8th Cir. 2014) (quotation omitted). "A district court's credibility findings are well-nigh unreviewable, so long as the findings are not internally inconsistent or based on testimony that is incoherent, implausible, or contradicted by objective evidence." Id. (quotation omitted).

## A. Stop

"The Fourth Amendment prohibits 'unreasonable searches and seizures' by the Government, and its protections extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest." United States v. Arvizu, 534 U.S. 266, 273 (2002) (quoting U.S. Const. amend IV). "[T]he Fourth Amendment is satisfied if the officer's action is supported by reasonable suspicion to believe that criminal activity 'may be afoot.'" Id. (quoting United States v. Sokolow, 490 U.S. 1, 7 (1989)). This entails an examination of the "'totality of the circumstances' of each case to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing." Id. (quoting United States v. Cortez, 449 U.S. 411, 417 (1981)). "Although an officer's reliance on a mere 'hunch' is insufficient to justify a stop, the likelihood of criminal activity need not rise to the level required for probable cause." Id. at 274 (quoting Terry v. Ohio, 392 U.S. 1, 27 (1968)). Suspicion does rise to the level of probable cause "'when the totality of the circumstances at the time of the arrest are sufficient to lead a reasonable person to believe that the defendant has committed or is committing an offense.'" Peterson v. Kopp, 754 F.3d 594, 598 (8th Cir. 2014) (quoting Ulrich v. Pope Cnty., 715 F.3d 1054, 1059 (8th Cir. 2013)).

In United States v. Bobo, 994 F.2d 524 (8th Cir. 1993), we confronted a similar situation. Police were searching for a Mr. Bobo with the alias "Hanky," who was suspected of homicide. Id. at 525. Having narrowed their search to Richard Bobo and Marvin Bobo (brothers), police suspected Marvin. See id. at 525-26. With a "pickup order" for Marvin, one officer began searching for a large green Cadillac in "beat-up condition," which eyewitness testimony tied to Marvin. Id. at 526. While on patrol, the officer happened upon "a green Cadillac in poor condition" driven by a man whom he "thought . . . closely resembled the mug shot of Marvin." Id. Officers pulled over the Cadillac (after a brief chase), noticing the driver "duck[] to his right and . . . reach under the driver's seat." Id. Officers arrested the man and found a firearm under his seat, but they soon realized the driver was Marvin's brother

-5-

Richard, who also happened to be a felon.  See id.  Although Richard argued the arrest based on the mistaken identity was unlawful, we "note[d] that if the police had probable cause to arrest Marvin, and they reasonably believed that the man driving the green Cadillac was Marvin, then Richard's arrest was a valid arrest."  Id. at 527.  Because (1) the officers had good reason to suspect Marvin, (2) Richard resembled Marvin, and (3) Richard was driving a car tied to Marvin, we concluded police had probable cause to arrest Richard.  See id.

As with the Bobo brothers, the officers here had probable cause to suspect Barefield of a crime, and they reasonably believed the man driving the gold-brown Buick was Barefield.  One of Agent Oliver's known informants mistakenly had identified the driver as Barefield.  Although we do not know the informant's past reliability, he was known to Agent Oliver and was "enlisted . . . to be a confidential informant, and therefore, could be held accountable . . . for false information." United States v. Kent, 531 F.3d 642, 649 (8th Cir. 2008).  The informant's willingness to arrange a meeting and his accurate prediction of events also provided strong support to the veracity of the informant's information.  See United States v. Winarske, 715 F.3d 1063, 1067 (8th Cir. 2013) ("An informant may . . . prove himself to be a reliable source for law enforcement by providing predictive information about a meeting time or place."); United States v. Manes, 603 F.3d 451, 456 (8th Cir. 2010) (reasoning the reliability of an informant's information "is bolstered if the tip is corroborated not only by matching an identity or description, but also by accurately describing a suspect's future behavior").  In this case, the time and location of the meeting place, the color of the car, the dent in its passenger-side door, and even the

car's make[3] all point to the informant's accuracy and truthfulness with regard to the driver's identity.

Even disregarding the mistaken identity, the informant told the officers that whoever the driver was, he would have drugs on him. This information, combined with the informant's corroborated credibility, also justified a reasonable belief the driver had committed a crime.

At the time Officer Gann made the stop, reasonable suspicion and even probable cause existed to believe the driver had committed a crime. This is more than enough to justify a stop. See Alabama v. White, 496 U.S. 325, 330 (1990) ("Reasonable suspicion is a less demanding standard than probable cause.").

## B.    Search

Patrick raises two arguments challenging the search of his car. Patrick first argues "[t]here was no probable cause" to arrest him so the search cannot be justified as a search incident to his arrest. As we concluded, the officers had probable cause before they stopped Patrick. In addition, the events during the stop further validated the informant's story and confirmed the officers' reasonable suspicions. Agent Newman and Officer Gann both could see what appeared to be contraband drugs in a plastic bottle in the car's center console, just as the informant predicted.

---

[3] As the district court explained, "Buicks and Oldsmobiles look very similar. . . . They are General Motors cars, whether it's gold or brown. I've had both." See, e.g., Creighton v. Anderson, 922 F.2d 443, 448 (8th Cir. 1990) ("The description of the getaway car (maroon or burgundy over silver, possibly a Buick) corresponded closely enough with the description of the Creightons' car (red or burgundy Oldsmobile) to create a strong suspicion that they might be the same car.").

Patrick resists this conclusion, contending the officers should have done more to verify he was Barefield. Patrick seems to think that because he identified himself as "Andre Patrick"—a name that showed no warrants and no criminal record—the officers could not reasonably believe he had committed a crime. Patrick's fixation on the identity issue blinds him to the fact that at the same time, the officers had caught him with controlled substances. When arrested, Patrick's identity was irrelevant—the officers reasonably suspected this man had contraband regardless whether he was the man they had thought he was.

Even if Patrick's identity were relevant, the officers had sufficient information reasonably to mistake Patrick for Barefield. We do not require absolute certainty of identity before an arrest can be made, because "there can always be more investigation to verify identity." Hill v. Scott, 349 F.3d 1068, 1074 (8th Cir. 2003). In addition to the informant's assurances, the officers also expected Barefield to be an African-American male and suspected Patrick was lying about his name and prison record (while sporting suspected prison tattoos). What is more, Patrick had no identification to verify his claimed name. See, e.g., Hill v. California, 401 U.S. 797, 799, 805 (1971) (finding officers' identity mistake to be reasonable *despite* the arrested man producing an identification verifying his claimed identity). Fully aware that "aliases and false identifications are not uncommon," id. at 803, and that even if genuine, Barefield's driver's license photos could differ greatly from his appearance in person (especially if his braided hairstyle had been altered since the time of the photo), the officers under the circumstances were not unreasonable in suspecting Patrick probably was Barefield.

Second, Patrick maintains the search of his car "was illegal under Arizona v. Gant," 556 U.S. 332 (2009). Absent a warrant or some other exception to the warrant requirement, Gant holds "[p]olice may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence

of the offense of arrest." Gant, 556 U.S. at 351. Without explanation or analysis, Patrick simply contends, "Under Gant, the search of [Patrick's] vehicle was in violation of [Patrick's] constitutional rights." Under the circumstances presented, the officers could be nearly certain of finding evidence of drug possession—the clear water bottle containing what appeared to be drugs was resting in plain sight, where the informant said drugs would be. Even assuming no other warrant exception is available, Gant permitted this search as one incident to Patrick's lawful arrest.

## III. CONCLUSION

For the reasons provided, we affirm the district court's denial of Patrick's motion to suppress.

_____