DAVID T. SCHULTZ, United States Magistrate Judge
I. INTRODUCTION
Defendants have moved for Summary Judgment, which motion has been referred for a Report and Recommendation [Docket No. 34]. For the reasons set forth below, the Court recommends that the Motion be granted in part and denied in part.
II. BACKGROUND
This dispute arises out of an incident that occurred on June 21, 2015. That afternoon, Defendant Officer Tschida was working as an off-duty officer at the University Avenue Walmart in St. Paul. [Docket No.
*1004 35 at 2]. Officer Tschida was alerted to a potential shoplifting incident involving Plaintiff James Frei and, in full police uniform, intercepted Frei as he left the store. Id. Frei voluntarily reentered Walmart with Officer Tschida who requested that Frei remove the contraband, later found to be a wireless speaker, from his pants. Id. ; [15-cr-206]. Frei instead pulled out a handgun and pointed it in Officer Tschida's face. Id. Officer Tschida ducked, and Frei bolted from the Walmart, gun in hand. Id. at 2-3; [Docket No. 29, Ex. 1 at 2]. The incident was captured on Walmart security cameras. [Docket No. 38, Ex. 1].
Officer Tschida pursued Frei toward Frei's girlfriend's truck, where he ordered Frei to "show his hands and exit." Id. at 3. Officer Tschida claims Frei responded by again pointing the gun at him, something Frei denies.[1] [Docket No. 57 at 1]. Officer Tschida fired five shots at Frei as Frei started the truck and sped through the parking lot, over a road verge, and on to University Avenue. [Docket No. 35 at 3]. Frei was grazed by a bullet on his left shoulder, but was otherwise unhurt. [Docket No. 14 at 2]. Offer Tschida did not interact with Frei again that evening. [Docket No. 38 at 3].
After hearing a radio broadcast of "shots fired," Officer Gilsrud joined what had become a high-speed chase pursuing Frei. [Docket No. 35 at 3]. Frei was "waving [a] gun" and "disobeying all traffic controls" throughout the pursuit. Id. The car chase came to a halt when Frei's truck suffered a "significant impact" with a parked vehicle, causing the airbags to deploy. [Docket No. 37 at 2]. Frei scrambled from the truck and fled on foot. [Docket No. 35 at 4]. After Frei slipped and fell, an unnamed police officer ordered Frei to remain on the ground. [Docket No. 37 at 2]. When Frei persisted in his attempts to stand, Officer Gilsrud kicked Frei in the head, and when Frei kept resisting, kicked him in the upper torso. Id. at 2-3. Officer Gilsrud and the other officer were then able to restrain Frei and place him in handcuffs. Id. at 3. Frei claims Officer Gilsrud kicked him "multiple times" in his face and chest while handcuffed; Officer Gilsrud insists he only kicked Frei twice, both times while Frei was actively resisting before being handcuffed. [Docket No. 1 at 4; Docket No. 37 at 3]. Frei was briefly examined by the St. Paul Fire Department Medics, who "did not locate any injuries on Frei that required immediate medical attention." [Docket No. 35 at 4]. Frei claims he had "visible injuries to [his] face, head, left shoulder and neck." [Docket No. 1 at 6]. Frei was brought immediately to the St. Paul Law Enforcement Center for booking. [Docket No. 35 at 4].
On December 30, 2015, Frei pleaded guilty to one count of being a felon in possession of a firearm, and was sentenced to 10 years in prison. United States of America v. James Ryan Frei , 15-cr-206 (ADM/JSM); [Docket No. 24 at 2; Docket No. 38].
Frei now brings suit claiming that (1) both Officer Tschida and Officer Gilsrud used excessive force; and (2) the unnamed St. Paul Fire Department Medics who treated Frei immediately after his arrest were deliberately indifferent to his medical needs. [Docket No. 1 at 7]. He seeks damages of $ 1,500,000. Id. Defendants have moved for summary judgment on all claims. [Docket No. 34].
III. STANDARD OF REVIEW
Summary judgment is granted when the "movant shows that there is no genuine *1005 dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material "if it 'might affect the outcome of the suit under the governing law.' " Hartnagel v. Norman , 953 F.2d 394, 395 (8th Cir. 1992) (quoting Anderson v. Liberty Lobby, Inc. , 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ). The "moving party has the burden of showing the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law." Enter. Bank v. Magna Bank of Missouri , 92 F.3d 743, 747 (8th Cir. 1996). The "nonmoving party, however, cannot rest upon mere denials or allegations in the pleadings... [but] must set forth specific facts, by affidavit or otherwise, sufficient to raise a genuine issue of fact for trial." Christenson v. St. Mary's Hosp. , 835 F.Supp. 498, 501 (D. Minn. 1993). When "ruling on a motion for summary judgment, '[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.' " Tolan v. Cotton , 572 U.S. 650, 134 S.Ct. 1861, 1863, 188 L.Ed.2d 895 (2014) (quoting Anderson v. Liberty Lobby, Inc. , 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ).
IV. ANALYSIS
A. Officer Tschida's Use of Force
Frei alleges that Officer Tschida used excessive force in violation of 42 U.S.C. § 1983 when he fired five rounds at Frei as Frei fled the Walmart parking lot. [Docket No. 50 at 1]. Officer Tschida argues the force used was objectively reasonable and he is entitled to qualified immunity in any event. [Docket No. 35 at 9-12].
Frei claims that, by firing five shots at him while he was fleeing, including one shot that grazed his shoulder, Officer Tschida employed "excessive and deadly force." [Docket No. 50 at 1]. Because he was fleeing, Frei argues that he "no longer posed any threat." Id. Frei does "not remember" pointing a gun at Officer Tschida just prior to when Officer Tschida opened fire. [Docket No. 26 at 2].
Excessive force claims against police making an arrest "are properly analyzed under the Fourth Amendment's 'objective reasonableness' standard." Graham v. Connor , 490 U.S. 386, 388, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). The court must determine "whether the amount of force used was objectively reasonable under the particular circumstances." Greiner v. City of Champlin , 27 F.3d 1346, 1354 (8th Cir. 1994). The "right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it...the calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments-in circumstances that are tense, uncertain, and rapidly evolving-about the amount of force that is necessary in a particular situation." Graham , 490 U.S. at 396-97, 109 S.Ct. 1865 (1989). Other "[c]ircumstances relevant to the reasonableness of the officer's conduct include 'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.' " Brown v. City of Golden Valley , 574 F.3d 491, 496 (8th Cir. 2009) (quoting Graham v. Connor , 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) ).
By his own admission and as corroborated by video evidence, Frei pointed a gun in a police officer's face in a busy store. Immediately, the incident shifted from a run-of-the-mill investigatory stop to a high stakes situation that endangered the lives of countless others. We judge the reasonableness of an officer's actions *1006 "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Graham , 490 U.S. at 396, 109 S.Ct. 1865 (1989). The cavalier attitude with which Frei threatened Officer Tschida suggested, regardless of whether he later pointed a gun at Officer Tschida, that Frei would not hesitate to draw his gun again. Nor did Frei, who retained the gun, indicate he no longer posed a threat by fleeing. Given what Officer Tschida knew at the time, his action in firing at Frei, who had endangered the lives of others, was objectively reasonable and did not violate Frei's Fourth Amendment right to be free from excessive force.
Even if Officer's Tschida's use of force had not been objectively reasonable, Frei's claims against him would be barred by qualified immunity, which "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " Pearson v. Callahan , 555 U.S. 223, 231, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009) (quoting Harlow v. Fitzgerald , 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) ). The "qualified immunity standard affords law enforcement officials an even wider berth for mistaken judgments 'by protecting all but the plainly incompetent or those who knowingly violate the law.' " Ulrich v. Pope Cty. , 715 F.3d 1054, 1059 (8th Cir. 2013) (quoting Hunter v. Bryant , 502 U.S. 224, 229, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) ). In evaluating whether qualified immunity applies, we first consider whether any clearly established constitutional right was violated and, if so, whether that right was clearly established when the alleged injury occurred. A claim can only proceed against a police officer if a clearly established right is violated and the officer should have been aware that the right exists. Pearson v. Callahan , 555 U.S. 223, 231, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009).
Regarding Officer Tschida's act of firing his weapon at an armed and fleeing Frei, this court is unable to find a case that disallows police officers from shooting at a now-fleeing suspect who had just threatened an officer with a gun he still possessed upon taking flight. To the contrary, there is ample precedent supporting an officer's right to use deadly force to apprehend suspects who pose a threat to others. See Tennessee v. Garner , 471 U.S. 1, 11, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985) ("if the suspect threatens the officer with a weapon or there is probable cause to believe that he has committed a crime involving the infliction or threatened infliction of serious physical harm, deadly force may be used if necessary to prevent escape."); Mullenix v. Luna , --- U.S. ----, 136 S.Ct. 305, 310, 193 L.Ed.2d 255, (2015) ("[t]he Court has thus never found the use of deadly force in connection with a dangerous car chase to violate the Fourth Amendment, let alone to be a basis for denying qualified immunity.") Qualified immunity is given liberally and "protects 'all but the plainly incompetent or those who knowingly violate the law.' " White v. Pauly , --- U.S. ----, 137 S.Ct. 548, 551, 196 L.Ed.2d 463 (2017) (quoting Mullenix v. Luna , --- U.S. ----, 136 S.Ct. 305, 308, 193 L.Ed.2d 255 (2015) ). One can quibble over whether Officer Tschida's decision to fire shots in a Walmart parking lot endangered more lives than it protected; but one cannot argue that that such actions are plainly incompetent or clear violations of law. Therefore, Officer Tschida is entitled to summary judgment on this ground as well.
B. Officer Gilsrud's Use of Force
Frei claims that Officer Gilsrud used excessive force when he kicked Frei at the conclusion of the police chase. [Docket No. 50 at 2]. Specifically, Frei claims he was kicked "repeatedly" by Officer *1007 Gilsrud, when he was "already down" and "no longer had a weapon." [Docket No. 50 at 2.] Officer Gilsrud claims he kicked Frei exactly twice while Frei was actively resisting arrest prior to being handcuffed. [Docket No. 37 at 3].
Thus, a material fact-whether Officer Gilsrud kicked Frei repeatedly after he had stopped resisting and was secured by handcuffs-is in dispute. Assuming, as we must, that Frei's version of events is true, Officer Gilsrud is not entitled to summary judgment.
What Frei asserts Officer Gilsrud did transcends what was objectively reasonable under the circumstances.[2] When, as Frei alleges, Frei was lying on the ground with his hands cuffed behind his back, it was unreasonable to believe that Frei would draw his weapon or continue to meaningfully resist arrest. No valid argument exists to suggest that kicking Frei "repeatedly" in his face was permissible to secure Frei from fleeing at that point. [Docket. No. 1 at 4; Docket No. 25 at 4]. Defendants argue that no material disputed fact exists, when one clearly does, but do not take the untenable position that Frei's version of events, if true, permits dismissal of his claims against Gilsrud. Therefore, accepting the disputed material facts in the light most favorable to the non-movant, Frei's claim of excessive force survives summary judgment.
Nor is Officer Gilsrud entitled to qualified immunity. Assuming Frei's version of events is true, kicking a suspect repeatedly after they have already surrendered and are securely in custody repeatedly has been found to violate the Fourth Amendment. See Blazek v. City of Iowa City , 761 F.3d 920, 925 (8th Cir. 2014) ("when a person is subdued and restrained with handcuffs, a 'gratuitous and completely unnecessary act of violence' is unreasonable and violates the Fourth Amendment.") (quoting Henderson v. Munn , 439 F.3d 497, 503 (8th Cir.2006) (alteration omitted) ); Hill v. Kansas City Metro Task Force , 182 F. Appx 620, 622-623 (8th Cir. 2006) (police officers denied qualified immunity involving use of force on a suspect who was handcuffed). Because ample legal precedent made clear that the force Frei alleges Officer Gilsrud used was impermissible, Officer Gilsrud is not entitled to qualified immunity on this record.
C. Deliberate Indifference to Frei's Medical Needs
Finally, Frei asserts an Eighth Amendment deliberate indifference claim, alleging that unnamed St. Paul Fire Department Medics who treated him immediately following the chase erred by not taking him to the hospital. Frei claims he suffered "head trama" [sic], bullet and shrapnel wounds and bruising resulting from the chase and his arrest. [Docket No. 57 at 2]. Despite his apparent injuries, Frei alleges he was only briefly treated at the scene, and then immediately brought to the St. Paul Law Enforcement Center for processing; he was not taken to a hospital. [Docket No. 37 at 3]. Accordingly, Frei claims the "St. Paul Fire Department Medics" were deliberately indifferent to his medical needs in violation of 42 U.S.C. § 1983. See Estelle v. Gamble , 429 U.S. 97, 105, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) ("[r]egardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983."). To establish a claim for deliberate indifference, two prongs must be met. Letterman v. Does , 789 F.3d 856, 862 (8th Cir. 2015). First, "an actor must 'know [ ] of and disregard [ ] an excessive risk to *1008 inmate health or safety.' " Id. (quoting Farmer v. Brennan , 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1970) ). Next, plaintiffs "must demonstrate the actor deliberately disregarded that risk." Id.
In his complaint and subsequent filings, Frei has named the "St. Paul Fire Department Medics" as a defendant, but has not named the individuals who treated him. However, "[l]iability for damages for a federal constitutional tort is personal, so each defendant's conduct must be independently assessed." Wilson v. Northcutt , 441 F.3d 586, 591 (8th Cir. 2006) ; See also, Doran v. Eckold , 409 F.3d 958, 965 (8th Cir. 2005) (" § 1983 liability is personal"). While local government units, such as a fire departments, are "persons" under § 1983, "Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort." Monell v. Dep't of Soc. Servs. of City of N.Y. , 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Here, Frei alleges the individual medics were deliberately indifferent, not that the policies of the St. Paul Fire Department Medics caused him harm. While Frei claims "he has tried to get [the medics] names but nobody knows them" [Docket No. 50 at 3], Defendants posit that Frei never sought the names while conducting discovery. [Docket No. 35 at 12]. Because a claim of deliberate indifference under § 1983 requires "persons" to be named, and because the "person" named is not alleged to be the source of the harm, the "St. Paul Fire Department Medics" are improperly named as Defendants.[3]
Even if the proper defendants had been named, there is no evidence of deliberate indifference to Frei's medical needs. Frei did not seek medical care until days later. He offers no evidence of injury caused by deliberate indifference. He claims he has suffered "PTSD" and "lower back pain," but provides no medical records or evidence to show that if he has the ailments, they resulted from Defendants' deliberate indifference. [Docket No. 57 at 3]. And while interpreting photographs is inherently subjective, the pictures taken of Frei the evening of his arrest do not indicate his alleged need for emergency medical care was known by or readily apparent to the medics. [Docket No. 55, Ex. 1]. Therefore, the first prong of deliberate indifference-knowledge of excessive risk to Frei's safety-is not met, because there is no evidence that the failure to take Frei to the hospital put his health at excessive risk. Even if the record demonstrated Frei required immediate medical attention, Frei offers no evidence the medics knowingly disregarded the risk to Frei's health. Therefore, even if the "St. Paul Fire Department Medics" were properly named defendants, the deliberate indifference claim would fail as a matter of law.
RECOMMENDATION
Based on the files, record, and proceedings herein, IT IS HEREBY RECOMMENDED that Defendants' Motion for Summary Judgment [Docket No. 34] be granted in part and denied in part:
1. Defendants' Motion for Summary Judgment be GRANTED to the claims *1009 against Officer Tschida and the St. Paul Fire Department Medics; and
2. Defendants' Motion for Summary Judgment be DENIED as to the claim against Officer Gilsrud.

Security footage of Frei's escape is difficult to see once Frei enters the truck, and thus neither supports nor rebuts Officer Tschida's assertion that Frei pointed a gun at him while in the truck.

Frei's assertion of these facts is contained not only in his Complaint, but also in answers to interrogatories and in response to Defendants' Motion for Summary judgment.

If Frei did not know the names of the individual St. Paul Fire Department Medics, he should have named them as John Does, and then used the discovery process to uncover their identities. Because it has been over two years since the disputed incident, it is too late to now substitute newly named defendants. See Cantrell v. Huckabee , 433 F. Appx 488, 490 (8th Cir. 2011) (where the Court found that "the district court did not abuse its discretion in dismissing the John Doe defendant, since [the plaintiff] never identified him, much less served him, during the two years between the filing of his complaint and the district court's order dismissing John Doe.").